IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| David Chester, | Case No. 3:06 CV 7075 |
| Plaintiff, | MEMORANDUM OPINION AND ORDER |
| -vs- | JUDGE JACK ZOUHARY |
| Quadco Rehabilitation Center, et al., | |
| Defendants. | |

Plaintiff brings suit under the Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq*. (FMLA). Specifically, Plaintiff claims Defendants interfered with, restrained and denied the exercise of his FMLA rights, and Defendants terminated him in retaliation for his attempt to exercise such rights. The Court has jurisdiction over these claims pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 2617(a)(2). This matter is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 55). Defendants' Motion is denied.

## **FACTS**

Plaintiff worked for Defendant Quadco Rehabilitation from 1988 until 2004. Quadco is a nonprofit corporation that provides training programs and employment opportunities that assist people with disabilities. Defendant Bruce Abell is Quadco's Executive Director. From 2001 until 2005, Quadco experienced financial difficulties and was forced to take cost cutting measures, including personnel layoffs. In 2002, eleven employees were terminated and their positions eliminated, as were various operations, facilities and departments. Quadco's financial problems were not solved, however, and in 2003 four more positions were eliminated. As financial troubles continued, Philip

Zuver, the Facility Director, recommended in October 2003 that Abell eliminate six more positions, including Plaintiff's position. However, no decision was made at that time.

In February 2004, Abell asked Terry Fruth, the Finance Director, to prepare a reorganization plan and detail the financial impact of eliminating the six specific positions. About this same time, Plaintiff requested vacation time from March 22 through March 26 so he could spend spring break with his children. His request was granted. Also around this time, Plaintiff told Zuver he wanted to take five days off when his wife was due to give birth. Zuver said this also was "fine."

In early March 2004, Fruth updated the reorganization plan, and at the annual planning meeting on March 10, Abell informed the Board that six positions would be eliminated in April 2004, again including Plaintiff's position. During this time, Plaintiff was told his five-day leave for the birth of his child should be requested as FMLA leave, not sick leave. Plaintiff, uncertain of the FMLA procedures for requesting additional time if necessary to care for his wife or child, spoke with Fruth who told Plaintiff he could extend his FMLA leave if necessary (Chester Dep. 52). On March 17, Plaintiff told Zuver he might take more than five days of FMLA leave if his wife or child became sick, and that Fruth would approve such an extension. Zuver told Plaintiff that requesting additional time was not alright, and if Plaintiff submitted an application for additional FMLA leave, it would negatively impact his evaluation (Chester Dep. 54).

Two days later, on March 19, Plaintiff officially requested FMLA leave from March 29 through April 5 to care for his newborn child due on March 26. Zuver approved the request that same day and, contrary to his previous threat, told Plaintiff to take as much leave time as he needed (Chester Dep. 58). Abell approved the leave on March 22 and, on March 25, Fruth wrote and mailed

2

a letter notifying Plaintiff his FMLA leave was approved. Plaintiff received notice of the approval on March 27.

On March 25, Abell told Zuver that Plaintiff's position was being eliminated, and Plaintiff was to be terminated as of April 5, 2005. Abell chose that date "based on [Plaintiff's] approved FMLA leave" (Abell Dep. 56). Prior to Abell's March 25 discussion with Zuver, Abell had told no one of his decision to terminate Plaintiff. Zuver sent Plaintiff notice of his termination, which Plaintiff received on March 26.

On April 5, 2004, despite knowing it was his last day of work, Plaintiff submitted an FMLA request, signed by his wife's doctor, to extend his FMLA leave for four to eight weeks due to his wife's serious health condition. In response, Fruth sent Plaintiff a letter denying the extension because Plaintiff's position had been eliminated, and included a copy of the relevant FMLA regulations.

## SUMMARY JUDGMENT STANDARD

Pursuant to FED. R. CIV. P. 56(c), summary judgment is appropriate where there is "no genuine issue as to any material fact" and "the moving party is entitled to judgment as a matter of law." *Id*. When considering a motion for summary judgment, the Court must draw all inferences from the record in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The Court is not permitted to weigh the evidence or determine the truth of any matter in dispute; rather, the Court determines only whether the case contains sufficient evidence from which a jury could reasonably find for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986).

3

### STATUTORY AND LEGAL FRAMEWORK

The FMLA entitles an employee to up to twelve weeks of unpaid leave during a twelve-month period in order to care for a spouse or child with a serious health condition, or to care for a newborn child.  29 U.S.C. §§ 2612(a)(1)(A), (C).  When an employee returns at the end of, or within, the twelve-week period, he is entitled to reinstatement to his previous position or an equivalent position. *Edgar v. JAC Products, Inc.*, 443 F.3d 501, 506 (6th Cir. 2006) (citing 29 U.S.C. § 2614(a)(1)).  The FMLA prohibits employers "from interfering with, restraining, or denying the exercise of their employees' rights under the statute," and from discharging or in any other manner discriminating against "any individual for opposing any practice made unlawful by [29 U.S.C. § 2615]." *Edgar*, 443 F.3d at 507; 29 U.S.C. § 2615(a)(1), (2).  The employee is provided an individual right of action against an employer who violates the FMLA under 29 U.S.C. § 2617. *Edgar*, 443 F.3d at 507.  "Two distinct theories of recovery arise under these statutes," the entitlement theory and the retaliation theory. *Id.* (citing *Arban v. West Pub. Corp.*, 345 F.3d 390, 400-01 (6th Cir. 2003).  Plaintiff alleges claims under both theories.

### ENTITLEMENT CLAIM

The entitlement theory for recovery on FMLA claims arises from 29 U.S.C. § 2615(a)(1), which states: "[i]t shall be unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right provided under this subchapter." *Id.*; *Arban*, 345 F.3d at 400-01.  Plaintiff alleges Defendants interfered with his FMLA rights through: (1) terminating Plaintiff's employment; (2) refusing to grant Plaintiff an extension of FMLA leave; and (3) failing to restore Plaintiff to his former position after FMLA leave.  Plaintiff's first and third allegations raise

4

essentially the same claim and arise out of his first FMLA leave request, while the second allegation arises out of his request for an extension.

In entitlement claims, the issue is "whether the employer provided its employee the entitlements set forth in the FMLA." *Arban*, 345 F.3d at 401. To prevail on an entitlement claim, Plaintiff must establish: (1) he was an eligible employee; (2) Defendants are employers as defined under the FMLA; (3) he was entitled to leave under the FMLA; (4) he gave Defendants notice of his intention to take leave; and (5) FMLA benefits were wrongly denied. *Edgar*, 443 F.3d at 507 (citing *Walton v. Ford Motor Co.*, 424 F.3d 481, 485 (6th Cir. 2005); *Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003)). In addition, as the FMLA is not a strict liability statute, Plaintiff must show harm caused by the violation. *Edgar*, 443 F.3d at 508 (citing *Ragsdale v. Wolverine World Wide, Inc.*, 535 U.S. 81, 89 (2002)).

### 1. FIRST FMLA LEAVE ENTITLEMENT CLAIM

Plaintiff alleges that by terminating his employment on April 5, 2004 and failing to restore him to his former position, or an equivalent one, Defendants interfered with Plaintiff's FMLA rights.

It is uncontested that Defendants were employers as defined by the FMLA and that they received notice of Plaintiff's intent to take the first FMLA leave and the extension of the FMLA leave. It is also undisputed that Plaintiff was an eligible employee when he requested his first FMLA leave, and that he was entitled to take FMLA leave to care for his wife and newborn child. Defendants, however, argue that Plaintiff was not entitled to reinstatement and therefore was not denied a right to which he was entitled.

Employees do not have an absolute right to reinstatement after FMLA leave. *Pharakhone v. Nissan North America, Inc.*, 324 F.3d 405, 407 (6th Cir. 2003). "An employer need not reinstate an

employee who would have lost his job even if he had not taken FMLA leave." *Id.; see also Arban*, 345 F.3d at 401 (termination of an employee is not a FMLA violation "if the dismissal would have occurred regardless of the employee's request for or taking of FMLA leave."); *Edgar*, 443 F.3d at 508 ("[b]oth the statute and the [Department of Labor] regulation likewise establish that interference with an employee's FMLA rights does not constitute a violation if the employer has a legitimate reason unrelated to the exercise of FMLA rights for engaging in the challenged conduct."). Thus, "the employee, in order to establish the entitlement protected by § 2614(a)(1), must, in the course of establishing the right, convince the trier of fact that the contrary evidence submitted by the employer is insufficient and that the employee would not have been discharged . . . if he had not taken FMLA leave." *Arban*, 345 F.3d at 401.

Defendants allege their financial difficulties, which began in 2001 and continued through Plaintiff's employment, forced Defendants to eliminate positions as a cost-saving measure. Defendants further contend that Plaintiff's position duplicated the work of other positions and could easily be eliminated. In fact, the elimination of Plaintiff's position had been discussed since at least October 2003, well before Plaintiff requested FMLA leave. Defendants argue that these financial problems were the reason for Plaintiff's termination, not his FMLA leave, and the termination would have occurred regardless of any leave request.

Plaintiff argues that he raises a question of material fact as to whether he would have been terminated if he had not taken FMLA leave. To support his argument, Plaintiff highlights the following allegations: (1) Zuver threatened Plaintiff with a bad evaluation if he extended his FMLA leave; (2) Abell did not tell anyone Plaintiff would be terminated until **after** Plaintiff requested FMLA leave; (3) of the six employees targeted for termination in 2004, only two, including Plaintiff, were

6

actually terminated; (4) the two highest paid employees targeted for termination in 2004 were not terminated; (5) the particular operation in which Plaintiff worked has been mostly profitable since 2002; (6) employees received substantial pay increases in 2004 and 2005; and (7) Abell testified he chose the April 5, 2004 termination date, based on Plaintiff's approved FMLA leave.[1]

Although Defendants refute these allegations, the Court finds sufficient evidence has been offered to create a material issue of fact. The timing of the termination could lead a jury to find that Plaintiff would not have been terminated absent his FMLA leave. In *Arban*, the employer provided substantial evidence that the decision to terminate the plaintiff had been made before he took medical leave, but the actual termination was delayed until after the holidays. *Arban*, 345 F.3d at 401. The delay cast sufficient doubt on the timing and reasons for the termination to permit "differing inferences" to be made. *Id.* at 401-02. The court also cited to the Seventh Circuit, which observed, "the timing of [the termination] decision could lead a fact finder to infer that the employee would not have been fired absent her taking of leave (if, for example, a supervisor who had been aware of problems with an employee did not decide to fire the employee until she took leave, and the supervisor based the firing on the incidents of which the employer had already been aware)." *Kohls v. Beverly Enters. Wisconsin, Inc.*, 259 F.3d 799, 806 (7th Cir. 2001). In *Arban*, the court ultimately held that, due to the differing inferences, "sufficient evidence was presented at trial for the jury to conclude that [the employer] denied [the plaintiff] his substantive right to reinstatement." *Arban*, 345 F.3d at 402.

---

[1] Plaintiff also refers to the terminations of Rita Huebner and Tamara Goebel, both of whom had requested FMLA leave shortly before their termination. The Court does not find their situations relevant to Plaintiff's entitlement claim as they do not help determine whether he would have been terminated even if he had not requested FMLA leave.

Another factually similar case is *Moorer v. Baptist Memorial Health Care System*, 398 F.3d 469, 490 (6th Cir. 2005). In *Moorer*, plaintiff had performance deficiencies severe enough to justify termination, but while the employer was aware of the deficiencies, the employer did not decide to terminate the plaintiff until he took medical leave. *Id.* Because of the termination timing, and "the fact that [the plaintiff] had called several of the termination reasons into question, shows that there was sufficient evidence presented for the factfinder to conclude that [the employer] denied [the plaintiff] his substantive right to reinstatement." *Id.* The court reversed the district court's grant of summary judgment.

As in *Arban* and *Moorer*, Defendants provide evidence of financial difficulties, and evidence that Abell made the decision to terminate Plaintiff prior to the leave. However, also like *Arban* and *Moorer*, the timing of the termination as well as evidence calling into question the extent of Defendants' financial difficulties, the very basis for Plaintiff's termination, provides sufficient evidence for a jury to conclude that Plaintiff would not have been fired absent his leave request. Accordingly, summary judgment is denied as to Plaintiff's entitlement claim based upon his termination and failure to be reinstated.

### 2. FMLA EXTENSION ENTITLEMENT CLAIM

For the purposes of Plaintiff's entitlement claim relating to his request for additional FMLA leave, Defendants do not dispute that they were an eligible employer, or that they received notice of Plaintiff's intent to take additional FMLA leave. The parties dispute, however, whether Plaintiff was an eligible employee when he requested the FMLA leave extension, was entitled to the FMLA leave extension, and was denied benefits relating to the extension.

The Court finds Plaintiff was an eligible employee when he requested the extension. An eligible employee is defined by the FMLA as an employee who has been employed for at least one year and has worked at least 1,250 hours during the preceding twelve-month period. 29 U.S.C. 2611(2)(A). Defendants do not contest that Plaintiff had been employed for at least one year and worked the 1,250 hours, but state Plaintiff was not an eligible employee because "[t]o be eligible for FMLA benefits, one must at a minimum be an 'employee,' not a 'recently terminated employee.'" *Dvorak v. Mostardi Platt Assoc.*, 289 F.3d 479, 486 (7th Cir. 2002). Defendants allege Plaintiff had already been terminated on April 5, 2004. However, Plaintiff's last day of work was April 5, 2004, even though he was on leave at the time (Chester Dep. Ex. G; Abell Dep. 51-52; Zuver Dep. 116-117). Plaintiff's termination letter clearly states, "Your last day of work is April 5, 2004" (Zuver Dep. Ex. 21). His termination was effective **after** April 5, and therefore Plaintiff was an eligible employee for FMLA benefits when he requested additional leave.

As to the third element, the Court finds there is at least a material issue of fact as to whether Plaintiff was entitled to an FMLA extension. Defendants do not dispute that the additional four to eight weeks to care for his wife, who was suffering from a severe health condition, is a qualifying FMLA reason. Instead, Defendants argue Plaintiff began working elsewhere on April 13, 2004, approximately one week after his original FMLA leave ended, and this timing raises questions about whether he really needed four to eight weeks to care for his wife, despite medical certification from his wife's doctor (Zuver Dep. Ex. 23). The Court finds sufficient disagreement on this issue to require submission to a jury. *Anderson*, 477 U.S. at 251-52 (1986). The Court also notes that even if he is entitled to an extension, Plaintiff's damages may be limited to the one week between jobs.

Finally, Plaintiff must show Defendants denied him FMLA benefits to which he was entitled. In contesting this element, Defendants again argue Plaintiff was not an eligible employee and not entitled to any FMLA benefits. As the Court has already determined, Plaintiff was an eligible employee on April 5 when he requested additional FMLA leave, which was denied because of his imminent termination. An employer can deny FMLA rights due to the employee's termination if the termination is unrelated to his FMLA leave request. *See Arban*, 345 F.3d at 401 (citing *Rice v. Sunrise Express*, 209 F.3d 1008, 1018 (7th Cir. 2000)).

Defendants present a legitimate reason for denying Plaintiff's request for extra FMLA leave beginning on April 6, the date Plaintiff's termination was effective. An employer's responsibility to provide FMLA rights ends at the time the employee is laid off, unless agreed otherwise. *See Throneberry v. McGehee Desha Cty. Hosp.*, 403 F.3d 972, 978 (8th Cir. 2005); 29 C.F.R. § 825.216(a)(1). Therefore, Defendants were under no obligation to provide FMLA leave after Plaintiff was terminated. However, the Court finds a material issue of fact remains as to Defendants' reason for Plaintiff's termination. Defendants may only deny Plaintiff FMLA rights if their reason is unrelated to his FMLA request, and the evidence regarding the relationship between Plaintiff's termination and request for additional leave allows for conflicting inferences. Specifically, while Defendants provide evidence Plaintiff's termination had been planned since October 2003 and the decision to terminate Plaintiff was made before his second FMLA leave request, Plaintiff's supervisor, Zuver, knew about the possibility Plaintiff would need more leave time prior to Plaintiff's notification of termination. There is also the question whether Zuver threatened Plaintiff with a bad evaluation if he took additional leave, and whether Zuver played a substantial role in Plaintiff's termination.

Therefore, summary judgment is denied as to Plaintiff's entitlement claim relating to his extension of leave.

### RETALIATION

Plaintiff also alleges Defendants terminated Plaintiff for exercising or attempting to exercise his FMLA rights. Plaintiff relies on indirect evidence as proof of retaliation. The burden-shifting test in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973) is applied to FMLA retaliation claims based on indirect evidence. *Skrjanc v. Great Lakes Power Serv. Co.*, 272 F.3d 309, 313-16 (6th Cir. 2001).

The *McDonnell Douglas* test requires Plaintiff to first prove a prima facie case of retaliation. The elements of a prima facie case are: (1) Plaintiff availed himself of a protected right under the FMLA; (2) he suffered an adverse employment action; and (3) a causal connection existed between the exercise of his FMLA rights and his termination. *Skrjanc*, 272 F.3d at 314. The burden then shifts to Defendants to articulate a legitimate, nondiscriminatory reason for the termination. *Id.* at 315. Once Defendants articulate a reason, Plaintiff must show the articulated reason is a pretext. *Id.*

### 1. PRIMA FACIE CASE

Defendants acknowledge that Plaintiff availed himself of FMLA rights and was adversely affected by his termination, but dispute the existence of a causal connection.

Defendants argue Plaintiff relies solely on the temporal proximity of Plaintiff's FMLA leave request and termination, which is insufficient to establish a causal connection. *Chandler v. Specialty Tires of America (Tenn.), Inc.*, 283 F.3d 818, 826 (6th Cir. 2002) (citing to *Skrjanc*, 272 F.3d at 317). However, contrary to Defendants' assertions, *Chandler* and *Skrjanc* both hold that proximity in time can establish a causal connection in a prima facie case of retaliation. *Id.*; *Skrjanc*, 272 F.3d at 317;

11

*see also Heady v. U.S. Enrichment Corp.*, 146 Fed. Appx. 766, 770-71 (6th Cir. 2005).  The cases are clear:  while temporal proximity alone is not enough to establish **pretext**, it is sufficient to show a **causal connection**.  *Chandler*, 283 F.3d at 826; *Skrjanc*, 272 F.3d at 317.  Here, Plaintiff was terminated less than a month after he made his FMLA request.  The Court finds sufficient temporal proximity to establish a causal connection.

Defendants then argue even though there was proximity in time, there can be no causal connection if the decision to eliminate the position was made **before** the employee requested FMLA leave.  Defendants argue that because Abell made the decision to terminate Plaintiff at least a month before his FMLA request, there can be no causal connection.

Defendants rely on *Regan v. Natural Resources Group, Inc.*, 345 F. Supp. 2d 1000, 1010-11 (D. Minn. 2004) (no causal connection where the decision to terminate was made and communicated to the employee prior to his FMLA request).  *Regan* is distinguishable because it is undisputed that here, Plaintiff was **not** notified of his termination until **after** he requested FMLA leave.  In addition, the date on which Abell decided to terminate Plaintiff is disputed.  Even though Abell discussed Plaintiff's termination in October 2003, and allegedly decided to terminate Plaintiff before his request was made on March 19, 2004, Abell did not tell anyone of his decision until after Plaintiff's FMLA request.  These facts could allow a reasonable jury to determine Abell did not make the decision to terminate Plaintiff until after he made his FMLA request.  Therefore, granting summary judgment based upon the date of the termination decision alone is inappropriate.

### 2. LEGITIMATE NONDISCRIMINATORY REASON FOR PLAINTIFF'S TERMINATION

Defendants state they terminated Plaintiff because "due to a reorganization and reduction in force, Plaintiff's position was no longer necessary" (Def.'s Mot. Summ. J. 17-18). This reason is sufficient to shift the burden of production to Plaintiff.

### 3. PRETEXT

Once Defendants articulate a legitimate nondiscriminatory reason for Plaintiff's termination, Plaintiff has the burden to show the reason is a pretext for retaliation. Plaintiff may prove pretext by providing "sufficient evidence from which the jury [could] reasonably reject the employer's explanation." *Manzer v. Diamond Shamrock Chems. Co.*, 29 F.3d 1078, 1083 (6th Cir. 1994). Pretext can be established by showing that Defendants' reason: (1) had no basis in fact; (2) did not actually motivate the decision to terminate; or (3) was insufficient to warrant the decision to terminate. *Manzer*, 29 F.3d at 1084. "A plaintiff must do more than simply impugn the legitimacy of the asserted justification for her termination; in addition, the plaintiff 'must produce sufficient evidence from which the jury may reasonably reject the employer's explanation.'" *Warfield v. Lebanon Correctional Inst.*, 181 F.3d 723, 730 (6th Cir. 1999) (citing *Manzer*, 29 F.3d at 1083).

Plaintiff argues pretext through the second and third methods. The second method of proving pretext is to show the reason did not actually motivate the decision to terminate. "To establish pretext under the second *Manzer* method, the plaintiff admits the factual basis underlying the discharge and acknowledges that such conduct *could* motivate the dismissal, but attacks the employer's explanation 'by showing circumstances which tend to prove an illegal motivation was *more* likely than that offered by the defendant.'" *Smith v. Leggett Wire Co.*, 220 F.3d 752, 759 (6th Cir. 2000) (citing *Manzer,* 29 F.3d at 1084). "In other words, the plaintiff argues that the sheer weight of the

13

circumstantial evidence of discrimination makes it 'more likely than not' that the employer's explanation is a pretext, or coverup." *Manzer,* 29 F.3d at 1084. Plaintiff would have to show that, even if Defendants' financial issues required the elimination of his position, it is more likely than not that Defendants terminated him because of his FMLA leave.

Plaintiff relies on the timing of the termination as well as all the evidence detailed in the entitlement claim, including: Zuver's alleged threat and the extent of his role in the decision to terminate Plaintiff; Abell's failure to communicate his decision to terminate Plaintiff prior to the FMLA request; and the termination of only two of the six targeted employees.[2] While temporal proximity alone is not enough to establish pretext, *Skrjanc*, 272 F.3d at 317, there is sufficient evidence from which a reasonable jury could find Plaintiff's FMLA request more likely than not motivated Defendants' actions.

The third method of showing pretext is to prove the non-discriminatory reason was insufficient to warrant the decision to terminate. This method usually consists of "evidence that other employees . . . were not fired even though they engaged in substantially identical conduct." *Manzer*, 29 F.3d at 1084. The compared employees must have "nearly identical" situations and be similar in all relevant aspects. *Pierce v. Commonwealth Life Ins. Co.*, 40 F.3d 796 (6th Cir. 1994). Here, Plaintiff points out that four of six employees whose positions were allegedly targeted for elimination in February 2004 were not terminated. Defendants argue two positions were not terminated because of a retirement and a resignation, which eliminated the positions without recourse to termination.

---

[2] Plaintiff also cites to the situations of Rita Huebner and Tammy Goebel, who were allegedly terminated immediately after they requested FMLA leave, to indicate Defendants engaged in a pattern of terminating employees after FMLA requests. The Court finds, however, Huebner and Goebel were only terminated after they exhausted their twelve weeks of leave and were still unable to return to work. *Cehrs v. Northeast Ohio Alzheimer's Research Center*, 155 F.3d 775, 784-85 (6th Cir. 1998).

However, for the two other positions, these employees were not terminated because an alternate position was found for one and no one could effectively absorb the other's duties. At this juncture, Plaintiff's situation may be substantially similar to that of these two retained employees such that a reasonable jury could conclude Defendants' financial concerns were insufficient to warrant the elimination of Plaintiff's position as well.

## CONCLUSION

When drawing all inferences in favor of Plaintiff, genuine issues of material fact remain as to all counts. Defendants' Motion for Summary Judgment (Doc. No. 55) is DENIED.

IT IS SO ORDERED.

    s/ *Jack Zouhary*
JACK ZOUHARY
U. S. DISTRICT JUDGE

April 20, 2007